## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

CRYSTAL MARTINEZ and TIFFANY
PARRISH, *on behalf of themselves all others
similarly situated*,

     Plaintiffs,

   v.

MENTAVI, INC., ADHD ONLINE LLC, and
ADHD ONLINE LLC d/b/a MENTAVI
HEALTH,

     Defendants.

Case No.: 25-CV-228

Hon. Robert J. Jonker

## **<u>DEFENDANT'S MOTION TO DISMISS</u>**

Defendant ADHD Online LLC d/b/a Mentavi Health ("Mentavi"), through its counsel, and pursuant to Fed. R. Civ. P. 12(b)(6) respectfully moves this Court to dismiss the Class Action Complaint filed by Plaintiffs Crystal Martinez and Tiffany Parrish ("Plaintiffs"). The grounds for this Motion are set forth in the attached Brief in Support.

WHEREFORE, Mentavi respectfully requests that the Court grant this Motion in its entirety and dismiss Plaintiffs' Class Action Complaint with prejudice. Mentavi further respectfully requests that the Court award Mentavi such other and further relief as the Court deems is appropriate.

Pursuant to L. Civ. R. 7.1(d)(i), counsel for Mentavi sought concurrence from counsel for Plaintiffs via email on July 1, 2025, but did not obtain concurrence in the above relief sought.

36437695.1

Dated: July 1, 2025                           Respectfully Submitted,

                                              MCDONALD HOPKINS PLC

                                              By: */s/ Timothy J. Lowe*
                                              Timothy J. Lowe (P68669)
                                              39533 Woodward Avenue, Suite 318
                                              Bloomfield Hills, Michigan 48304
                                              (248) 220-1359
                                              tlowe@mcdonaldhopkins.com

                                              Jennifer W. Torrez
                                              300 N. LaSalle St., Ste. 1400
                                              Chicago, IL 60654
                                              (312) 280-0111
                                              jtorrez@mcdonaldhopkins.com

                                              *Attorneys for Defendant ADHD Online LLC d/b/a
                                              Mentavi Health*

.

36437695.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

CRYSTAL MARTINEZ and TIFFANY
PARRISH, *on behalf of themselves all others
similarly situated*,

                     Plaintiffs,

       v.

MENTAVI, INC., ADHD ONLINE LLC, and
ADHD ONLINE LLC d/b/a MENTAVI
HEALTH,

               Defendants.

Case No.: 25-CV-228

Hon. Robert J. Jonker

## <u>BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

36437695.1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................ii

STATEMENT OF ISSUES PRESENTED............................................................ vi

I.  INTRODUCTION ....................................................................................... 1

II.  ALLEGED FACTS & CLAIMS ................................................................. 2

III.  LEGAL STANDARD.................................................................................. 3

IV.  ARGUMENT  ............................................................................................. 4

    A.  Count I Fails to State a Claim for Violation of the ECPA ........................ 4

    B.  Count II for Negligence Fails for Lack of Duty and Damages................ 7

        1.  Plaintiffs fail to allege the existence of any legally recognized duty .................. 8

        2.  Plaintiffs fail to plead cognizable damages ........................................ 9

    C.  Count III for Breach of Implied Contract Fails to Allege Mutual Assent, Consideration and Damages .................................................. 10

        1.  Plaintiffs failed to allege mutual assent........................................... 11

        2.  Plaintiffs failed to allege consideration sufficient to support contract formation ................................................................. 11

        3.  Plaintiffs fail to allege they suffered legally cognizable damages .................... 13

    D.  Count IV Fails to Plead Breach of Confidence....................................... 14

    E.  Count V for Unjust Enrichment Fails for Lack of Benefit and Alleged Inequity... 15

V.  CONCLUSION ......................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acara v. Banks*,
  470 F.3d 569 (5th Cir. 2006) ..................................................................................8

*Alan Custom Homes, Inc. v. Krol*,
  256 Mich. App. 505 (2003)....................................................................................13

*Alar v. Mercy Mem. Hosp.*,
  208 Mich. App. 518 (1995)....................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................3

*Boddie v. ABC, Inc.*,
  881 F.2d 267 (6th Cir. 1989) ..................................................................................5

*Burkhardt v. Bailey*,
  260 Mich. App. (2004)...........................................................................................11

*Caro v. Weintraub*,
  618 F.3d 94 (2d Cir. 2010)...................................................................................5, 6

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................................7

*Delphi Auto. PLC v. Absmeier*,
  167 F. Supp. 3d 868 (E.D. Mich. 2016).................................................................14

*Detroit v. Highland Park*,
  326 Mich. 78 (1949) ..............................................................................................10

*Doe v. Genesis Health Sys.*,
  No. 23-cv-04209, 2025 WL 100192 (C.D. Ill. March 18, 2025)............................6

*Doe v. Henry Ford Health Sys.*,
  308 Mich. App. 592 (2014)..................................................................................9, 13

*Emergency Dep't Physicians P.C. v. United Healthcare, Inc.*,
  507 F. Supp. 3d 814 (E.D. Mich. 2020)..............................................................11, 13

*Erickson v. Goodell Oil Co.*,
  384 Mich. 207 (1970) ............................................................................................11

ii

*In re Estate of Lewis*,
    168 Mich. App. 70 (1988)..................................................................................10

*In re Facebook Internet Tracking Litig.*,
    263 F. Supp. 3d 836 (N.D. Cal. 2017) ...............................................................4

*Fritz v. Charter Twp. of Comstock*,
    592 F.3d 718 (6th Cir. 2010) .............................................................................3

*In re Gallagher Data Breach Litig.*,
    631 F. Supp. 3d 573 (N.D. Ill. 2022) ...............................................................15

*Gen. Aviation, Inc. v. Cap. Region Airport Auth.*,
    224 Mich. App. 710 (1997)..............................................................................12

*General Motors Corp. v. Dept. of Treasury, Revenue Div.*,
    466 Mich. 231 (2002) ......................................................................................11

*In re Google Cookie Placement Consumer Priv. Litig*,
    806 F.3d 125 (3rd Cir. 2015) .............................................................................6

*Goulart, et. al. v. Cape Cod Healthcare, Inc.*,
    No. CV 25-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025) ..............5, 6

*Hall v. Centerspace, LP*,
    No. 22-cv-2028, 2023 WL 3435100 (D. Minn. May 12, 2023) ...........................15

*Henry v. Dow Chem. Co.*,
    473 Mich. 63 (2005) .............................................................................7, 9, 14

*Highfield Beach at Lake Michigan v. Sanderson*,
    331 Mich. App. 636 (2020)..............................................................................14

*Irwin v. Jimmy John's Franchise, LLC*,
    175 F. Supp. 3d 1064 (C.D. Ill. 2016) .............................................................16

*Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*,
    65 F.3d 498 (6th Cir. 1995) .............................................................................11

*Kirch v. Embarq Mgmt. Co.*,
    702 F.3d 1245 (10th Cir. 2021) .........................................................................7

*Landstar Express Am., Inc. v. Nexteer Auto. Corp.*,
    319 Mich. App. 192 (2017)..............................................................................15

*Mallory v. City of Detroit*,
    181 Mich. App. 121 (1989).........................................................................10, 12

iii

*In re McKim Estate*,
    238 Mich. App. 453 (1999)............................................................................................10

*In Re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................................5

*Miller-Davis Co. v. Ahrens Const., Inc.*,
    495 Mich. 161 (2014) ................................................................................................13

*Morris Pumps v. Centerline Piping, Inc.*,
    273 Mich. App. 187 (2006)........................................................................................15

*Peavy v. WFAA-TV, Inc.*,
    221 F.3d 158 (5th Cir. 2000) ......................................................................................7

*Penner v. Seaway Hosp.*,
    169 Mich. App. 502 (1988)........................................................................................13

*Powers v. Peoples Cmty. Hosp. Auth.*,
    183 Mich. App. 550 (1990)........................................................................................13

*Rakyta v. Munson Healthcare*,
    No. 354831, 2021 WL 4808339 (Mich. App., Oct. 14, 2021)...........................9, 14

*Randall v. Michigan High Sch. Athl. Ass'n.*,
    334 Mich. App. 697 (2020)..........................................................................................8

*Ross v. Glasser*,
    220 Mich. App 183 (1996)...........................................................................................8

*Sussman v. Am. Broad Cos., Inc.*,
    186 F. 3d 1200 (9th Cir.1999) ....................................................................................5

*Teeter v. Easterseals-Goodwill Northern Rocky Mountain, Inc.*,
    No. CV-22-96-GF-BMM, 2023 WL 2330241 (D. Mont., March 2, 2023) ..............8

*United States v. McHugh*,
    57 F. Supp. 39 (D. Mass. 2014) ..................................................................................5

*Williams v. Cunningham Drug Stores, Inc*,
    429 Mich. 495 (1988) ..................................................................................................8

*Williams v. TMC Health*,
    No. CV-23-00434, 2024 WL 4364150 (D. Ariz. Sept 30, 2024) ...............................6

**Statutes**

18 U.S.C. § 2511(1) .......................................................................................1, 3, 4, 5, 6, 7

iv

18 U.S.C. § 2511(2)(d) .................................................................................................4, 5

Health Insurance Portability and Accountability Act (HIPAA) .......................................5, 8, 9, 13

**Rules**

Fed.R.Civ.P. 12(b)(6).................................................................................................1

36437695.1

## STATEMENT OF ISSUES PRESENTED

1. Whether the Court should dismiss with prejudice Count I of Plaintiffs' Class Action Complaint under Rule 12(b)(6) because Plaintiffs failed to allege an unauthorized interception, as required to state a claim for violation of the Federal Electronic Communications Privacy Act, and Plaintiffs further cannot establish application of the crime-tort exception.

   **Defendant answers: Yes.**

   **The Court should answer: Yes.**

2. Whether the Court should dismiss with prejudice Count II of Plaintiffs' Class Action Complaint under Rule 12(b)(6) because Plaintiffs cannot establish a duty or damages to state a claim for negligence under Michigan law.

   **Defendant answers: Yes.**

   **The Court should answer: Yes.**

3. Whether the Court should dismiss with prejudice Count III of Plaintiffs' Class Action Complaint under Rule 12(b)(6) because Plaintiffs failed to properly plead the elements of contract formation sufficient to state a claim for breach of implied contract.

   **Defendant answers: Yes.**

   **The Court should answer: Yes.**

4. Whether the Court should dismiss with prejudice Count IV of Plaintiffs' Class Action Complaint under Rule 12(b)(6) because they cannot establish either a duty or damages, prerequisites to stating a claim for breach of fiduciary duty.

   **Defendant answers: Yes.**

   **The Court should answer: Yes.**

5. Whether the Court should dismiss with prejudice Count V of Plaintiffs' Class Action Complaint under Rule 12(b)(6) because plaintiffs failed to plead either a benefit conferred or unjustly retained sufficient to state a claim for unjust enrichment.

   **Defendant answers: Yes.**

   **The Court should answer: Yes.**

36437695.1

Defendant ADHD Online LLC d/b/a Mentavi Health ("Mentavi"),[1] in support of its Rule 12(b)(6) Motion to Dismiss Plaintiffs' Class Action Complaint (the "Complaint," ECF No. 1), states as follows:

## I.    INTRODUCTION

This case is one of many in an avalanche of litigation throughout the country regarding the use of now-ubiquitous website analytics technology. Here, Plaintiffs Crystal Martinez and Tiffany Parrish (together "Plaintiffs") allege that Mentavi employed commonly used analytics tools, including the Meta Pixel, Google Analytics, Google DoubleClick, and other alleged "tracking tools" to intercept their communications with Mentavi's website and disclose sensitive information to third parties for marketing and advertising purposes. Plaintiffs' Complaint should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure for the following reasons.

*First*, Plaintiffs' claim for violation of the Electronic Communications Privacy Act fails because they cannot allege an unauthorized interception. Specifically, the ECPA is a one-party consent statute and Mentavi cannot "intercept" its own communications. Plaintiffs further cannot establish application of the "crime-tort" exception.

*Second*, Plaintiffs' negligence claim fails because they cannot establish a legally recognized duty for safeguarding online browsing activity and the damages they claim are insufficient under Michigan law.

*Third*, Plaintiffs' breach of implied contract claim fails because they failed to properly allege mutual assent, consideration, or damages.

---

[1] Incorrectly named as "Mentavi, Inc., ADHD Online, LLC and ADHD Online LLC d/b/a Mentavi Health."

36437695.1

*Fourth*, Plaintiffs' breach of confidence claim fails because they cannot establish either a duty owed by Mentavi or cognizable damages.

*And fifth*, the alternative unjust enrichment claim fails because Plaintiffs did not plead a benefit conferred on Mentavi and, even if a benefit were conferred, Plaintiffs did not allege an unjust retention of any benefit.

## II.    ALLEGED FACTS & CLAIMS

Mentavi is a Delaware corporation headquartered in Grand Rapids, Michigan. (Compl., ¶ 38.) Plaintiffs allege that Mentavi operates a public website, https://adhdonline.com (the "Website"), which provides a variety of information and services, including connecting individuals with providers, among other things. (*See id.* at ¶ 4.) Plaintiff Crystal Martinez alleges that she is a citizen of Tennessee and that she accessed the Website in 2023 to seek services and treatments for her medical conditions. (*Id*. at ¶¶ 33, 208.) Plaintiff Tiffany Parrish alleges that she is a citizen of Georgia and that she utilized the Website as recently as November 2023 to seek medical treatment and obtain a diagnosis. (*Id*. at ¶ 217.)

Plaintiffs generally allege that analytics technologies, including the Meta Pixel, Google Analytics, and Google DoubleClick were embedded into the source code of the Website and allowed third parties to intercept Plaintiffs' communications with the Website. (*Id*. at ¶ 7.) According to Plaintiffs, the technologies deployed on the Website transmitted patient Protected Health Information ("PHI") and Personally Identifiable Information ("PII") to third parties for advertising purposes. (*Id*. at ¶ 19.) Specifically, Plaintiffs claim that the technologies transmit information including medical information for marketing purposes "to increase [Mentavi's] revenues and profits." (*Id*. at ¶ 22.)

Based on these allegations, Plaintiffs assert five causes of action: (1) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) ("ECPA"); (2) negligence; (3) breach of implied contract; (4) breach of confidence; and (5) unjust enrichment. Plaintiffs seek to represent a nationwide class defined as "[a]ll persons residing in the United States whose PHI and PII was disclosed to a third party without authorization or consent through Tracking Tools on ADHD Online's Website." (*Id.* at ¶ 232.) Plaintiffs seek actual, statutory, and various forms of equitable relief, along with attorneys' fees and costs. (*Id.* at pp. 73-74.)

### III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Although the Court must draw all reasonable inferences in favor of the plaintiff, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.* at 679; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

36437695.1

## IV.    ARGUMENT

**A.  Count I Fails to State a Claim for Violation of the ECPA.**

In Count I of the Complaint, Plaintiffs allege that Mentavi unlawfully intercepted and disclosed the electronic communications of Plaintiffs and members of the putative class in violation of the ECPA. To state a claim for violation of the ECPA, a plaintiff must show that "the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (internal quotation marks omitted). Here, Mentavi was the intended recipient of the alleged communications and, consequently, could not "intercept" any of Plaintiffs' communications.

The ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d). As such, it does not apply where the alleged interceptor was a party to the communication—the so-called "party exception." Specifically, the statute provides:

> It shall not be unlawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

*Id*.

Here, the only communications Plaintiffs allege were intercepted were their interactions with Mentavi's public Website. (Compl., ¶¶ 210, 220.) Mentavi was thus indisputably a party to the communications at issue and Plaintiffs cannot state a claim under the ECPA. Indeed, Plaintiffs admit that Mentavi was a party to the communications. (Compl., ¶ 268.)

4

Despite this admission, Plaintiffs attempt to circumvent application of the party exception by summarily alleging that Mentavi's actions were "tortious and designed to violate federal law, including the Health Insurance Portability and Accountability Act (HIPAA)," ostensibly in an attempt to trigger application of the "crime-tort" exception-to-the-exception. (Compl., ¶¶ 270, 272.) But the crime-tort exception requires Plaintiffs to plausibly allege that Mentavi intercepted the communication "for the purpose" of committing a criminal or tortious act. 18 U.S.C. § 2511(2)(d). "Congress chose the word 'purpose' for a reason." *Caro v. Weintraub,* 618 F.3d 94, 100 (2d Cir. 2010).

> Therefore, the offender must have as her objective a tortious or criminal result. Had Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act. But Congress limited the cause of action to instances *where one party to the conversation deliberately seeks to harm the other participant* through the information intercepted.

*Id.* (second emphasis added). As the Sixth Circuit observed in considering the crime-tort exception, in light of the substantial statutory penalties available under the Act and "evil purposes" which it attempts to govern, "We think it is the use of the interception with intent to harm rather than the fact of interception that is critical to liability . . ." *Boddie v. ABC, Inc.*, 881 F.2d 267, 270 (6th Cir. 1989) (internal quotations omitted). More specifically, to state a claim under the ECPA, a plaintiff must plausibly plead facts from which the court could reasonably infer that "either the 'primary motivation' or a 'determinative factor' in the actor's decision to record [is] the intent to commit a criminal or tortious act." *Goulart, et. al. v. Cape Cod Healthcare, Inc.*, No. CV 25-10445-RGS, 2025 WL 1745732, at *3 (D. Mass. June 24, 2025) (citing *United States v. McHugh*, 57 F. Supp. 39, 95, 99-100 (D. Mass. 2014) and *Sussman v. Am. Broad Cos., Inc.*, 186 F. 3d 1200, 1202 (9th Cir.1999); *see also, In Re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022).

Plaintiffs fail to plausibly allege that a criminal or tortious purpose was the "primary motivation" or "determinative factor" in Mentavi's purported disclosure of information. In fact, the Complaint specifically alleges a commercial motivation. Specifically, Plaintiffs claim that Mentavi employed third-party advertising technology for the purpose of marketing and to increase profits. (*See* Compl., ¶¶ 22, 262.) Although the Complaint also claims that Mentavi acted with "the purpose of committing a tortious or criminal act . . ." (*id*. at ¶ 266), these perfunctory assertions do not withstand the scrutiny of the *Twombly-Iqbal* standard, which "puts the burden on plaintiffs to assert factual allegations that give plausible heft to their claims . . ." *Goulart*, 2025 WL 1745732, at * 3) (dismissing ECPA claim for failure to plausibly plead application of the crime tort exception); *see also Williams v. TMC Health*, No. CV-23-00434, 2024 WL 4364150, at *4 (D. Ariz. Sept 30, 2024) (finding that the use of tracking technologies to obtain personal data, increase profits, and improve website analytics demonstrate a non-criminal, non-tortious purpose); *Doe v. Genesis Health Sys.*, No. 23-cv-04209, 2025 WL 100192, at *9 (C.D. Ill. March 18, 2025) (dismissing ECPA claim where plaintiff pleaded that technology was used by defendant for marketing and advertising). Because Plaintiffs fail to plead facts to plausibly implicate the crime-tort exception, the ECPA fails on this basis alone.

However, not only must a plaintiff plead that the defendant's primary motivation was criminal or tortious, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement Consumer Priv. Litig*, 806 F.3d 125, 145 (3rd Cir. 2015) (quoting *Caro*, 618 F.3d at 100) (emphasis in original). In other words, a "simultaneous tort arising from the act of recording itself is insufficient," because "[n]othing more is required after the interception is made for liability to attach based on this tort." *Caro*, 618 F.3d

6

at 100-01. Consequently, Plaintiffs must allege that Mentavi acted with the intent to commit a crime or tort separate and distinct from the use of analytics technology on the Website. The Complaint fails to allege an independent tort. In fact, Plaintiffs' claim is tethered to the alleged disclosure of browsing activity on the Website. Specifically, Plaintiffs claim that Mentavi's purported interception of PHI and PII was "*simultaneous*" to the alleged communications. (Compl., ¶ 268) (emphasis added). The failure to plead an *independent* criminal or tortious act also dooms Plaintiffs' ECPA claim.

Finally, to the extent Plaintiffs allege that Mentavi procured a third-party to intercept the contents of electronic communications, that claim also fails as a matter of law. Indeed, courts have consistently held that the ECPA does not provide a private right of action against parties who allegedly "procured" a third-party interception. *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2021) (holding that there is no civil ECPA claim for "procuring" or "aiding and abetting"); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (same); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) (holding "there is simply no secondary liability (such as aiding and abetting) under the ECPA."). For all these reasons, Plaintiffs fail to state a claim under the ECPA.

**B.  Count II for Negligence Fails for Lack of Duty and Damages.**

To state a negligence claim, a plaintiff must plead facts demonstrating the existence of a duty, breach of that duty, causation, and damages. *Henry v. Dow Chem. Co*., 473 Mich. 63, 72 (2005). In this case, Plaintiffs fail to properly plead the existence of either a duty owed by Mentavi or damages incurred by Plaintiffs and the putative classes.

36437695.1

**1. Plaintiffs fail to allege the existence of any legally recognized duty.**

"As part of a *prima facie* case of negligence, a plaintiff must show that defendant owed him a recognized duty of care." *Ross v. Glasser*, 220 Mich. App 183, 186 (1996) (citation omitted). "As a general rule, there is no duty that obligates one person to aid or protect another." *Williams v. Cunningham Drug Stores, Inc*, 429 Mich. 495, 499 (1988). For a duty to exist, there must be a "special relationship" between the persons. *Ross*, 220 Mich. App. at 187. Here, Plaintiffs allege no factual basis to support the existence of a duty.

Michigan does not recognize a duty to safeguard online browsing information. Additionally, although Plaintiffs summarily allege that Mentavi owed a duty of confidentiality to Plaintiffs' and the putative class (Compl., ¶ 291), they do not plead any fact supporting the existence of such a duty.

Nor can Plaintiffs rely on HIPAA to supply the missing duty. To determine whether a statute creates a particular duty with respect to a particular party, Michigan "courts consider two questions: (1) did the Legislature intend that the statute would prevent the type of injury and harm actually suffered by the party; and (2) did the Legislature intend that the party was within the class of persons protected by the statute?" *Randall v. Michigan High Sch. Athl. Ass'n.*, 334 Mich. App. 697, 720 (2020) (citations omitted). Michigan courts have not interpreted whether HIPAA can form the basis of an alleged duty with respect to data security. However, the intent of the Legislature is clear. Indeed, HIPAA does not provide a private right of action. *See Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("Every district court that has considered this issue is in agreement that the [HIPAA] statute does not support a private right of action."). Because the statute does not contain a private right of action, some courts have declined to hold that HIPAA creates an ascertainable duty. *See, e.g., Teeter v. Easterseals-Goodwill Northern Rocky Mountain, Inc.*, No. CV-22-96-GF-

8

BMM, 2023 WL 2330241, at *4 (D. Mont., March 2, 2023) (holding that the plaintiff could not rely on either HIPAA or the FTC Act to provide a duty for her negligence claim).

Even if HIPAA could conceivably provide a duty applicable here, Plaintiffs have not properly pleaded as much. Indeed, Plaintiffs do not specify how HIPAA could provide a duty relating to non-patient users of a public website, and thus how those users could be within the class of persons protected. Because they have not pleaded the existence of a duty, Plaintiffs cannot state a claim for negligence.

**2. Plaintiffs fail to plead cognizable damages.**

"Underlying [the] four elements [of a negligence claim] is the issue of injury, and it is well settled that, in Michigan, the injury complained of in a negligence action must be an actual, present injury." *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 600 (2014); *see also Rakyta*, 2021 WL 4808339, at *3 ("[O]nly damages that arise from an actual, present injury, are cognizable under Michigan law.") (citing *Henry*, 473 Mich. at 75-76).

Courts consistently hold that "only damages that arise from an actual, present injury, are cognizable under Michigan law." *Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339, at *3 (Mich. App., Oct. 14, 2021) (citing *Henry v. Dow Chem. Co.*, 473 Mich. 63, 75-76 (2005)). "Michigan law requires more than a merely speculative injury." *Henry*, 473 Mich. at 72. The present physical injury requirement "more clearly defines who actually possesses a cause of action," "reduces the risks of fraud," and ensures "that there will be standards-legally comprehensible standards that guide the judicial branch's resolution of the matters brought before it." *Henry*, 473 Mich. at 76.

In this case, Plaintiffs do not claim to have suffered any quantifiable or compensable injury. They do not claim to have suffered any identity theft, misuse of funds, or impairment of credit due

to any alleged exposure of information. Instead, they claim to have suffered a variety of abstract injuries relating to targeted advertising, including emotional distress and fear, as well as, lost benefit of the bargain and diminished value of personal information. (Compl., ¶¶ 215-16, 225-26.) These speculative allegations of injury are simply not enough under Michigan law. Consequently, Plaintiffs' negligence claim fails as a matter of law.

## C. Count III for Breach of Implied Contract Fails to Allege Mutual Assent, Consideration and Damages.

Plaintiffs allege that, "as a condition of utilizing Defendant's Website and receiving services from Defendant's professionals, Plaintiffs and the Class Members provided their PHI and PII and compensation for their medical care." (Compl., ¶ 295.) Based on this allegation, Plaintiffs conclude that they and the putative class members "entered [into] an implied contract pursuant to which Defendant agreed to safeguard and not disclose their PHI and PII without consent." (*Id*. at ¶ 296.)

In Michigan, contracts can be implied in fact or implied in law. *See In re McKim Estate*, 238 Mich. App. 453, 457-58 (1999). An implied-in-fact contract arises "when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor." *In re Estate of Lewis*, 168 Mich. App. 70, 75 (1988). Such a contract "does not exist, unless the minds of the parties meet, by reason of words or conduct." *Detroit v. Highland Park*, 326 Mich. 78, 100 (1949). Like an express contract, "[a]n implied contract must also satisfy the elements of mutual assent and consideration." *Mallory v. City of Detroit*, 181 Mich. App. 121, 127 (1989). In this case, Plaintiffs failed to allege mutual assent and consideration to support formation of an enforceable contract, and, as set forth above with respect to Count II, Plaintiffs failed to establish the requisite element of cognizable damages.

10

**1. Plaintiffs failed to allege mutual assent.**

"[A]n implied-in-fact contract arises between parties when those parties show a mutual intention to contract." *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 504 (6th Cir. 1995). A contract can be implied in fact where the intention as to it is "gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Erickson v. Goodell Oil Co.*, 384 Mich. 207, 212 (1970). Mutual assent, or a meeting of the minds, as to "all essential terms of a contract" is a "fundamental tenet of all contracts." *Burkhardt v. Bailey*, 260 Mich. App., 636, 655 (2004); *see also Emergency Dep't Physicians*, 507 F. Supp. 3d at 828 (dismissing claim for breach of implied contract for failure to allege mutual assent to terms of agreement).

Here, the Complaint alleges generally that Mentavi's "Notice of Privacy Practices" is the source of the terms of this purported implied contract. (Compl., ¶¶ 148-157, 276.) But Plaintiffs fail to point to any specific language from the Notice of Privacy Practices to support these alleged terms. Consequently, the Complaint fails to identify any concrete terms of the purported implied contract, much less the specific conduct, language, or other pertinent circumstances from which an agreement to be bound can be inferred. Plaintiffs' allegations concerning the supposed contract(s) fall far short of alleging circumstances supporting an implication of mutual assent to "all" contractual terms. Absent allegations that the parties discussed, understood, or were even aware of the necessary terms, Plaintiffs have not alleged that a meeting of the minds was reached.

**2. Plaintiffs failed to allege consideration sufficient to support contract formation.**

Consideration consists of a bargained-for exchange. *See General Motors Corp. v. Dept. of Treasury, Revenue Div.*, 466 Mich. 231, 238 (2002) (citation omitted). "There must be a benefit on one side, or a detriment suffered, or service done on the other." *Id.* at 238-239. Here, Plaintiffs

do not allege that they provided any consideration for the alleged contract. They do not, for example, claim to have paid Mentavi for the use of its Website. Nor could they, because the Website is accessible to anyone with an internet connection. And although they claim to have used the Website to purchase prescriptions or pay for medical services (Compl., ¶¶ 216, 220), such payment does not constitute consideration because there is no nexus between those alleged payments and the purported agreement at issue. The alleged payments, in other words, were for medical treatment, *not* for Website usage or data security. That conclusion is inescapable given that the proposed class includes "[a]ll *persons* residing in the United States . . ." (Compl., ¶ 232) (emphasis added). The proposed class, by definition, includes many individuals who were not patients or customers of Mentavi and thus never paid Mentavi for healthcare services, data security, or anything else.

Moreover, Plaintiffs fail to allege that *Mentavi* provided any consideration for the contract. Although consideration need not be substantial and can be as simple as a promise, it is black-letter law in Michigan that a party cannot enter a contract by making a promise they have already made. *See Mallory v. City of Detroit*, 181 Mich. App. 121, 127 (1989) ("Where a defendant has a preexisting duty . . . there can be no contract."); *Gen. Aviation, Inc. v. Cap. Region Airport Auth.*, 224 Mich. App. 710, 715 (1997) ("A pledge to undertake a preexisting statutory duty is not supported by adequate consideration."). Where the law requires a defendant to take, or refrain from taking, certain actions, those actions cannot be recast as contractual obligations. *See id.* (affirming dismissal of contract claim where defendant owed a preexisting obligation under the Michigan Aeronautics Code).

Michigan courts have repeatedly affirmed that this principle applies to contracts—express and implied. *See, e.g.*, *Alar v. Mercy Mem. Hosp.*, 208 Mich. App. 518, 525 (1995) (hospital's

promise to keep patient's information confidential as part of treatment not consideration for alleged contract due to hospital's preexisting duty to protect information); *Powers v. Peoples Cmty. Hosp. Auth.*, 183 Mich. App. 550, 554 (1990); *Penner v. Seaway Hosp.*, 169 Mich. App. 502, 511 (1988).

Here, Plaintiffs do not specify *any* consideration provided by Mentavi. Nevertheless, to the extent Plaintiffs attempt to base an allegation of consideration on the obligations arising under HIPAA or other similar legal obligation, that is insufficient. Because a "promise to perform an existing legal duty is insufficient consideration," *Emergency Dep't Physicians P.C. v. United Healthcare, Inc.*, 507 F. Supp. 3d 814, 828 (E.D. Mich. 2020). Any alleged promise by Mentavi to protect Plaintiffs' PII and PHI cannot support the formation of an enforceable contract.

### 3. Plaintiffs fail to allege they suffered legally cognizable damages.

A plaintiff asserting breach of contract must show damages. *See Miller-Davis Co. v. Ahrens Const., Inc.*, 495 Mich. 161, 178 (2014). Damages are not presumed; rather, they must be proved with "reasonable certainty" and are recoverable only if they "are the direct, natural, and proximate result of [a] breach." *Alan Custom Homes, Inc. v. Krol*, 256 Mich. App. 505, 512 (2003). Nor may damages be speculative. *See Doe*, 308 Mich. App. at 602 ("Because [plaintiff's] speculative damages derive from a possible future harm that might or might not occur, rather than directly from the breach of contract, plaintiff may not recover under contract law . . . .")

Plaintiffs do not claim to have suffered any legally cognizable contract damages. For example, they do not allege any facts suggesting that they or putative class members spent money on credit monitoring or incurred any other form of out-of-pocket losses arising from the use of Mentavi's Website. Accordingly, they do not claim to have suffered any actual, non-speculative loss as a result that can be recovered under a breach of contract theory.

13

**D.  Count IV Fails to Plead Breach of Confidence.**

Plaintiffs' Count IV is styled as "breach of confidence," which, under Michigan law, is more appropriately titled "breach of fiduciary duty." And, in order to establish a claim for breach of fiduciary duty, a plaintiff must prove: (1) the existence of a duty; (2) a breach of that duty; and (3) proximately caused damages. *Highfield Beach at Lake Michigan v. Sanderson*, 331 Mich. App. 636 (2020) (citing *Delphi Auto. PLC v. Absmeier,* 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016). Here, Plaintiffs fail to allege the necessary elements of duty and damages.

Plaintiffs' breach of confidence claim fails because the allegations are insufficient as a matter of law. Plaintiffs allege, in conclusory fashion, that Mentavi had "a duty to keep [medical information] completely confidential." (Compl., ¶ 305). However, Plaintiffs fail to allege facts supporting the existence of a confidential relationship to support this duty. Mentavi's mere provision of a website, and individuals' use of it, in no way rises to the level of a confidential relationship when that website is available to the public. Logically, many of the users of the Website are not patients, and information input into the Website may not be medical in nature. Under these circumstances, it would be unreasonable to infer a fiduciary and/or confidential relationship with every individual user of the Website.

Even if Plaintiffs had properly alleged a duty owed by Mentavi with respect to its Website, their breach of confidence claim should still be dismissed for the failure to plead damages. Again, Plaintiffs must plead more than a mere speculative injury. *Henry*, 473 Mich. at 72. The types of injuries alleged here are the same types of speculative injuries that were insufficient in *Henry* and *Rakyta* to demonstrate an actual, present injury or compensable damages.

Consequently, the breach of confidence claim fails.

**E.  Count V for Unjust Enrichment Fails for Lack of Benefit and Alleged Inequity.**

In the alternative to their "common law causes of action," Plaintiffs allege that they conferred a benefit on Mentavi in the form of PHI and PII. (Compl., ¶ 314.) Plaintiffs further allege that Mentavi unjustly retained that benefit at the expense of Plaintiffs and the putative classes. (*Id.* at ¶ 316.) To state a cause of action for unjust enrichment, a "plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (2006). Notably, "not all enrichment is necessarily unjust. The key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit." *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich. App. 192, 205 (2017) (dismissing unjust enrichment claim where "benefit defendant received . . . was nothing more than what all the parties contemplated"). Against this standard, Plaintiffs' unjust enrichment claim fails for three reasons.

First, they do not plausibly allege that they conferred any benefit on Mentavi. Plaintiffs claim that they, and members of the putative class, conferred a benefit in the form of PHI and PII. (Compl., ¶ 314.) Plaintiffs then summarily conclude that the provision of PHI and PII provided Mentavi with "economic intangible, and other benefits, including substantial monetary compensation." (*Id.*) Plaintiffs do not plead facts to support this conclusion. Nor could they. "Courts have, however, routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (internal quotation omitted) (collecting cases and dismissing unjust enrichment claim for failure to allege a benefit conferred on defendant); *Hall v. Centerspace, LP*, No. 22-cv-2028, 2023 WL 3435100, at *6 (D. Minn. May 12, 2023) (dismissing unjust enrichment

claim where plaintiff did "not identify a benefit plausibly conferred upon [defendant] through the provision of PII"). The claim fails for this reason alone.

Second, even if the provision of PHI or PII could be considered a form of benefit, Plaintiffs additionally fail to allege that they provided the information in exchange for website data security services. Indeed, any monetary payment Plaintiffs allegedly made would have been wholly separate and distinct from use of the Website. Any individual with an internet connection has the ability to access and use Mentavi's Website.

And third, even if Plaintiffs conferred some sort of benefit on Mentavi in the form of monetary payment, they fail to allege any injustice in retaining it. Indeed, there is no allegation that they failed to receive the services sought; indeed, the quality of Mentavi's services is not at issue. Nor do Plaintiffs allege that Mentavi understood that Plaintiffs (supposedly) believed they were paying for data privacy in addition to healthcare services. *See, e.g.*, *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (dismissing unjust enrichment claim against restaurant because plaintiff "did not pay for a side order of data security and protection; it was merely incident to her food purchase, as is the ability to sit at a table to eat her food, or to use Jimmy John's restroom."). For all these reasons, Plaintiffs' unjust enrichment claim fails and Count V should be dismissed.

## V.    CONCLUSION

For all the foregoing reasons, Mentavi respectfully requests that the Court grant its motion to dismiss Plaintiffs' Complaint.

Respectfully Submitted,

Dated: July 1, 2025                    MCDONALD HOPKINS PLC

By: */s/ Timothy J. Lowe*
Timothy J. Lowe (P68669)
39533 Woodward Avenue, Suite 318

16

36437695.1

Bloomfield Hills, Michigan 48304
(248) 220-1359
tlowe@mcdonaldhopkins.com

Jennifer W. Torrez
300 N. LaSalle St., Ste. 1400
Chicago, IL 60654
(312) 280-0111
jtorrez@mcdonaldhopkins.com

*Attorneys for Defendant ADHD Online LLC d/b/a
Mentavi Health*

17

36437695.1

## <u>CERTIFICATE OF COMPLIANCE WITH W.D. MICH. LCivR 7.2(b)(ii)</u>

Pursuant to Local Civil Rule 7.2(b)(i)&(ii), the Brief in Support of Defendant's Motion to Dismiss does not exceed 10,800 words, including headings, footnotes, citations and quotations. Microsoft Word 2016 was used to generate a word count for the above-mentioned Brief of approximately 4,932 words.

*/s/ Timothy J. Lowe*
Timothy J. Lowe (P68669)

36437695.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of July, 2025, I served the forgoing *Defendant's Motion To Dismiss, Brief in Support*, *Certificate of Compliance with W.D. Mich. LCivR 7.2(b)(ii)*, and this *Certificate of Service* through the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Timothy J. Lowe*

Timothy J. Lowe (P68669)

36437695.1